IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

CHANDRA BUTLER o/b/o
SHAYLA BUTLER                                                                PLAINTIFF

          v.                    Civil No. 04-1120

JO ANNE B. BARNHART,
Commissioner, Social
Security Administration                                                      DEFENDANT

## MEMORANDUM OPINION

### Factual and Procedural Background:

The plaintiff in this case, Chandra Butler (hereinafter "plaintiff"), has appealed the final decision of the Commissioner of the Social Security Administration (hereinafter "Commissioner"), denying her claim on behalf of her minor daughter, Shayla Butler (hereinafter "claimant"), for supplemental security income (hereinafter "SSI") benefits under § 1602 of Title XVI, *42 U.S.C. § 1381a*. Both parties have filed appeal briefs (Doc. #7 & 8). In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *42 U.S.C. § 405(g)*.

The history of the administrative proceedings is contained in the respective briefs and in the ALJ's written decision and will not be recounted here except as necessary.

The plaintiff asserts disability due to claimant's attention deficit hyperactivity disorder, borderline intellectual functioning (hereinafter "BIF"), and nighttime enuresis. The issue before this Court is whether the Commissioner's decision is supported by substantial record evidence.

The ALJ followed the new sequential evaluation process, set forth in *20 C.F.R. §*

*416.924.* Under the new standard, a child must prove that he has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *42 U.S.C. § 1382c(a)(3)(c)(I); 20 C.F.R. § 416.906.*

When passing the new law, as it relates to children seeking SSI disability benefits, Congress decided that the sequential analysis should be limited to the first three steps. This is made clear in the House conference report on the law, prior to enactment. Concerning childhood SSI disability benefits, the report states:

> The conferees intend that only needy children with severe disabilities be eligible for SSI, and the Listing of Impairments and other current disability determination regulations as modified by these provisions properly reflect the severity of disability contemplated by the new statutory definition.... The conferees are also aware that SSA uses the term "severe" to often mean "other than minor" in an initial screening procedure for disability determination and in other places. The conferees, however, use the term "severe " in its common sense meaning.

*142 Cong. Rec. H8829-92, 8913 (1996 WL 428614), H.R. Conf. Rep. No. 104- 725 (July 30, 1996).*

Consequently, under the new law, the analysis ends at step three with the determination of whether the child's impairments meet or equal any of the listed impairments. More specifically, a determination that a child is disabled requires the following three-step analysis. See *20 C.F.R. § 416.924(a).* First, the ALJ must consider whether the child is engaged in substantial gainful activity. See *20 C.F.R. § 416.924(b).* If the child is so engaged, he or she will not be awarded SSI benefits. See *id.* Second, the ALJ must consider whether the child has

-2-

a severe impairment. See *20 C.F.R. § 416.924(c)*. A severe impairment is an impairment that is more than a slight abnormality. See *id.* Third, if the impairment is severe, the ALJ must consider whether the impairment meets or is medically or functionally equal to a disability listed in the Listing of Impairments, *20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings")*. See *20 C.F.R. § 416.924(c)*. Only if the impairment is severe and meets or is medically or functionally equal to a disability in the Listings will it constitute a disability within the meaning of the Act. See *20 C.F.R. § 416.924(d)*. Under the third step, a child's impairment is medically equal to a listed impairment if it is at least equal in severity and duration to the medical criteria of the listed impairment. 20 C.F.R. § 416.926(a). To determine whether an impairment is functionally equal to a disability included in the Listings, the ALJ must assess the child's developmental capacity in six specified domains. See *20 C.F.R. § 416.926a(b)(1)*. The six domains are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and, (6) health and physical well-being. See *20 C.F.R. § 416.926a(b)(1)*.

If the child claiming SSI benefits has marked limitations in two categories or an extreme limitation in one category, the child's impairment is functionally equal to a disability in the Listings. See *20 C.F.R. § 416.926a(b)(2)*. A marked limitation is an impairment that is "more than moderate" and "less than extreme." A marked limitation is one which seriously interferes with a child's ability to independently initiate, sustain, or complete activities. See *20 C.F.R. § 416.926a(e)(2)*. An extreme limitation is "more than marked", and exists when a child's impairment(s) interferes very seriously with his or her ability to independently initiate,

-3-

sustain or complete activities. Day-to-day functioning may be very seriously limited when an impairment(s) limits only one activity or when the interactive and cumulative effects of the impairment(s) limit several activities. See *20 C.F.R. § 416.926a(e)(3)*.

**Discussion:**

This court reviews a decision by an ALJ "to determine whether it is supported by substantial evidence on the record as a whole." *Bailey v. Apfel, 230 F.3d 1063, 1065 (8th Cir.2000); 42 U.S.C. § 405(g).* Our scope of review is narrow; we must affirm the Commissioner's decision so long as it conforms to the law and is supported by substantial evidence on the record as a whole. *Collins ex rel. Williams v. Barnhart 335 F.3d 726, 729 (8th Cir.2003);Qualls v. Apfel, 158 F.3d 425, 427 (8th Cir.1998)*. Substantial evidence is relevant evidence that reasonable minds might accept as adequate to support the decision. *Hunt v. Massanari, 250 F.3d 622, 623 (8th Cir.2001)*. The issue on appeal is whether there is substantial evidence to support the ALJ's determinations under the three-step sequential test. The undersigned employs the same three-step sequential test as the ALJ to evaluate the evidence and the alleged disability. Because plaintiff does not contest the ALJ's finding regarding substantial gainful activity, we bypass the first step. Under the second step, we agree that claimant's impairments of attention deficit hyperactivity disorder (hereinafter "ADHD"), and epilepsy are severe. Consequently, the pivotal issue remains the third step, namely, whether there is substantial evidence in the record to support the finding that claimant's impairments do not rise to the medical or functional level of severity necessary to equal a disability listed in Appendix 1 of 20 C.F.R. § 404, Subpart P. See *Pepper ex rel. Gardner v. Barnhart 342 F.3d 853, 855 (8th Cir.2003)*.

AO72A
(Rev. 8/82)

The regulations provide:

(a) *Basic considerations.* We consider all relevant information (*i.e.,* evidence) in your case record. The evidence [] may include information from medical sources, such as your pediatrician, other physicians, psychologist, or qualified speech-language pathologist; other medical sources not listed in § 416.913(a), such as physical, occupational, and rehabilitation therapists; and nonmedical sources, such as your parents, teachers, and other people who know you.

(1) *Medical evidence -- (i) General.* Medical evidence of your impairment(s) must describe symptoms, signs, and laboratory findings. The medical evidence may include, but is not limited to, formal testing that provides information about your development or functioning in terms of standard deviations, percentiles, percentages of delay, or age or grade equivalents. It may also include opinions from medical sources about the nature and severity of your impairments. (*See* § 416.927).

*(ii) Test scores.* We consider all of the relevant information in your case record and will not consider any single piece of evidence in isolation. Therefore, we will not rely on test scores alone when we decide whether you are disabled. (*See* § 416.926a(e)) for more information about how we consider test scores.

*20 C.F.R. § 416.924a(a)(1)(i)-(ii).*

At the time of the administrative hearing, the claimant was 7 years old and was repeating the first grade (T. 149, 146, 148). Both the plaintiff, claimant's mother, and the claimant testified at the hearing, and plaintiff was represented by counsel (T. 145). The administrative hearing was conducted on October 28, 2003 (T. 145-170), after which the ALJ issued his written decision, dated February 26, 2004 (T. 11-18).

As has been noted, there are several ways to demonstrate that a child is disabled. *20 C.F.R. § 416.926a(b).* If the ALJ had found that the claimant had an extreme impairment in one functional area or marked impairments in two functional areas, then he would have been entitled to benefits. *20 C.F.R. § 416.926a(d).*

Here, the ALJ assessed that the claimant has: moderate, but less than a marked

-5-

limitation in the domains: of acquiring and using information; relating with others; and, attending and completing tasks. He was found to have no limitation in the areas of: health and physical well-being; moving and manipulating objects; and, self care (T. 17). The ALJ's findings are supported by substantial evidence of record.

The record contains numerous notations indicating that the claimant's ADHD and enuresis are significantly controlled by her medication (T. 103, 120, 154, 46, 52, 84, 85, 90, 110, 139). Elsewhere in the record, it is indicated that many of the claimant's problems may have been due, in part, to the lateness of her birthday with respect to school grade deadlines and thus, her immaturity upon entering school (T. 96, 98, 115).

After carefully examining the record, the undersigned concludes that the ALJ's determinations are supported by substantial evidence in the record. There is ample evidence that suggests that when claimant takes her medication, her functioning, in all contested categories is adequate. To the contrary, there is little evidence of an impairment or combination of impairments which seriously interferes (marked), with a the claimant's ability to independently initiate, sustain, or complete activities in two or more broad areas of functioning, or which interferes very seriously (extreme), with his ability to independently initiate, sustain or complete activities, in one domain. Finally, the record also documents the plaintiff's inconsistent attention to the treatment regimen, and an issue of noncompliance (T. 103, 136, 138, 140).

In fact, the claimant's kindergarten teacher, Camille Dixon, completed a School Questionnaire on April 4, 2002, noting claimant experienced no problems with communication and social functioning, and no problem concentrating on things of interest to claimant; but,

AO72A
(Rev. 8/82)

there was some noticeable interference with concentration on class work, working independently and completing assignments on time (T. 94). Additional interference was caused by temper outbursts (on a monthly basis); lack of self-confidence (on a weekly basis), and being childish/immature (on a daily basis). Responses to interventions were good to fair (T. 95). Ms. Dixon explained:

> Shayla was born in the month of July but she seems developmentally delayed. She loves to color but can't follow directions to complete activities correctly.

(T. 96).

When evaluated by South Arkansas Regional Health Center (hereinafter "SARHC"), on May 23, 2002, claimant reported she "plays with her friends. She enjoys playing baby dolls, purses, and walking on the sidewalk, 'not in the street'"(T. 117). Further, the examiner summarized, in part:

> *Client's Condition/Problems* - Shayla Butler presents to SARHC at the request of her mother. Ms. Butler states that Shayla is fighting and pinching classmates. She is constantly on the go and is always tearing up her toys. Ms. Butler states Shayla will tear the arms and legs from her dolls. According to Shayla's mother, she has been this way most of her life evidence by beginning her on Clonidine at the age of one. Another behavior mentioned by Ms. Butler is over the winter Shayla turned the flame off to the gas stove, however, she then turned the stove back on and the house filled with gas. When family members came back into the house, they discovered this, so she no longer leaves Shayla alone.
>
> *Current/Potential Strengths & Assets* - Shayla appears to be a fairly intelligent, active, pretty little girl, who loves her mother very much.
>
> *Current/Potential Needs* - Shayla appears to need more attention and affection than what her mother currently expresses.
>
> *Current/Potential Abilities* - Shayla appears to be able to follow instructions evidenced by cleaning up all the toys she took out and played with.
>
> *Current Preferences* - Ms. Butler states she wants to find out what is wrong with Shayla and why she is constantly on the go.

AO72A
(Rev. 8/82)

> *Positive/Negative Factors likely to effect/impact course of care* - Shayla appears to be a bright, active little girl, who can easily express herself.

(T. 119). Claimant was diagnosed with ADHD combined type, by history (T. 119).

The Weschler Preschool and Primary Scale of Intelligence - Revised (hereinafter "WPPSI-R"), was administered to the claimant on May 17, 2002, when she was five (5) years and nine (9) months old. The licensed psychological examiner evaluated the claimant's verbal IQ at 75, her performance IQ to be 81 and her full scale IQ at 76. However, he also noted:

> Test results indicate that Shayla is functioning within the Borderline range of Intelligence. The examiner does not dispute the category listed, but reminds the reader that Shayla seemed a little lethargic and had taken her medicine shortly before coming to the appointment.

(T. 121).

Further, the examiner, Kenneth Robinson, noted discrepancies between the plaintiff's reports of claimant's actions, and what he observed during the testing session (T. 121-122). With respect to the three domains that plaintiff asserts were incorrectly assessed by the ALJ, acquiring and using information, attending and completing tasks, and interacting and relating with others, Mr. Robinson made additional observations. For example, he noted that claimant was "able to speak in an intelligible manner. She appears to have an average expressive vocabulary." Mr. Robinson also qualified his intellectual assessment, stating that "some effects of medication cannot be ruled out." (T. 121). Concerning her ability to attend to and complete tasks, the examiner noted that "Shayla was able to focus adequately on most activities. Concentration and focus problems were more likely to appear while listening to questions and instructions. Her pace of activity was seen as slower than average." (T. 122). And finally, with respect to claimant's ability to interact and relate with others, while the plaintiff reported

-8-

that claimant fights with her sisters "all the time" and that her behavior is "the same at school" and "teachers send notes home that Shayla goes around pinching and interfering with other students". The examiner noted that Shayla did not exhibit any of those types behavior traits while at the session, although that may have been, in part, due to her medication. The reports from Ms. Dixon did not indicate the severity of the types of traits reported by the plaintiff, in regard to this domain (T. 93-100).

If an impairment can be controlled by treatment or medication, it cannot be considered disabling. *Roth v. Shalala*, 45 F.3d 279, 282 (8th Cir.1995); *Stout v. Shalala*, 988 F.2d 853, 855 (8th Cir.1993). Furthermore, the ALJ properly focused on the claimant's ability to function despite her impairments, rather than on diagnoses. See *Trenary v. Bowen*, 898 F.2d 1361, 1364 (8th Cir.1990).

Accordingly, based on all of the foregoing, it is found that the plaintiff's arguments are without merit and they are, therefore, rejected.

**Conclusion:**

Accordingly, the undersigned concludes substantial evidence of record exists to support the ALJ's decision that the claimant's impairments are neither medically nor functionally equal to a listed impairment, and ultimately, that the claimant is not disabled. Therefore, it is determined that the decision of the ALJ, denying benefits to the plaintiff on behalf of the claimant, should be affirmed and the Complaint should be dismissed with prejudice.

ENTERED this 3rd day of January, 2006.

/s/ Bobby E. Shepherd
HONORABLE BOBBY E. SHEPHERD
UNITED STATES MAGISTRATE JUDGE

AO72A
(Rev. 8/82)